# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
MARGARET HOLMES,                    )
                                    )
    Plaintiff,                      )
                                    )
                                    )
    v.                              )    **Civil Action No. 05-2023 (RBW)**
                                    )
                                    )
PHI SERVICE CO.,[1]                 )
                                    )
    Defendant.                      )
_____ )

## MEMORANDUM OPINION

    The plaintiff, Margaret Holmes, brings this action alleging sex discrimination and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.

(2000) ("Title VII") against defendant PHI Service Co.  Complaint ("Compl.") ¶¶ 28-46.  Count I

of the complaint alleges that the plaintiff was treated differently than other employees on account

of her gender, id. ¶¶ 28-35, while Count II of the complaint alleges that the plaintiff was

disciplined and ultimately terminated in retaliation for bringing an administrative action before

the Equal Employment Opportunity Commission ("EEOC") alleging the disparate treatment

contained in Count I, id. ¶¶ 36-46.

    Currently before the Court are the plaintiff's motion to remand this matter to the District

of Columbia Superior Court and the defendant's motion to dismiss the retaliatory discharge

claim contained in Count II of the plaintiff's complaint for failure to state a claim for which relief

_____

[1] The original complaint named as the defendant Pepco Holdings, Inc.  In its Answer ("Ans."), the defendant noted that PHI Service Co. was the plaintiff's actual employer, and therefore substituted PHI Service Co. for Pepco Holdings, Inc. as the defendant in this matter.  See Ans. at 1 n.1.

can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  Because the Court must

examine material beyond the pleadings, it will treat the defendant's motion as seeking summary

judgment under Rule 56.  See Fed. R. Civ. P. 12(b); Yates v. District of Columbia, 324 F.3d 724,

725 (D.C. Cir. 2003) (holding that parties' submissions and the Court's consideration of matters

outside pleadings "had the effect of converting the Rule 12 motion . . . into a motion for

summary judgment").  For the reasons set forth below, the Court denies both parties' motions.

## I.  Background

The plaintiff alleges the following facts in support of her complaint.  The plaintiff, who

commenced her employment with the defendant in 1989, Compl. ¶ 8, alleges that she began to

experience disparate treatment in October 2002, when she notified her supervisor that she was

pregnant.  Id. ¶¶ 9-10.  After that revelation, the plaintiff alleges that her time away from her

desk was scrutinized in a way different than male or non-pregnant female employees, id. ¶ 10,

that her request for a seat change was denied with rude remarks by her supervisor, id. ¶¶ 11-12,

that she was inappropriately disciplined for spending time away from her desk, id. ¶¶ 15-17, that

her lunch hour was changed, id. ¶ 21, and that, following a December 2002 miscarriage, she was

required to notify her supervisor in advance whenever she would be away from her desk more

than fifteen minutes, id. ¶ 21.

---

[2]The following papers have been submitted to the Court in connection with these motions:  (1) the plaintiff's
Motion to Remand to State Court and Memorandum of Law in Support Thereof ("Pl.'s Mot."); (2) the Defendant's
Opposition to Plaintiff's Motion to Remand ("Def.'s Opp."); (3) the plaintiff's Reply to Defendant's Opposition to
Motion to Remand ("Pl.'s Reply"); (4) the Defendant's Supplement to its Opposition to Plaintiff's Motion to
Remand ("Def.'s Supp."); (5) the Defendant's Motion to Dismiss and Memorandum of Law in Support Thereof
("Def.'s Mot."); (6) the Plaintiff's Opposition to Defendant's Motion to Dismiss and Memorandum of Law in
Support Thereof ("Pl.'s Opp."); (7) the Defendant's Reply in Further Support of its Motion to Dismiss ("Def.'s
Reply"); and (8) the Plaintiff's Supplemental Opposition to Defendant's Motion to Dismiss ("Pl.'s Supp.").

In March 2003, in response to this allegedly disparate treatment, the plaintiff filed a complaint with the EEOC alleging sexual discrimination in violation of Title VII and the District of Columbia Human Rights Act of 1977. Compl. ¶ 22; Def.'s Mot., Ex. 1 at 1. After she had filed this complaint, the plaintiff alleges that her supervisor failed to inform her of a job opening contrary to company practice, Compl. ¶ 23, that she was denied a job change for which she applied and for which she was sufficiently qualified, id. ¶ 24, that she was assigned additional responsibilities formerly performed by other employees for which she received no commensurate increase in compensation, id. ¶ 25, and that the defendant failed to provide her with performance evaluations for two years, id. ¶ 26. All of these actions, according to the plaintiff, were taken in retaliation for her filing the administrative complaint with the EEOC in March 2003. Id. ¶ 43.

On January 21, 2004, the plaintiff amended the discrimination charge she had filed with the EEOC to include charges relating to her supervisor's failure to inform her of a job opening, denying her application for a job change, assigning her additional responsibilities without an increase in pay, and failing to give her a performance evaluation. See Def.'s Mot., Ex. 2 at 1-2. The defendant then terminated the plaintiff's employment on March 4, 2005, Compl. ¶ 27, which the plaintiff contends was also done in retaliation for her EEOC complaint, id. ¶ 43. The plaintiff did not, however, amend her EEOC charge to include a claim for retaliatory discharge at that time. The EEOC dismissed the plaintiff's discrimination and retaliation charges, and issued the plaintiff a right-to-sue letter on May 5, 2005, citing as the reason for dismissal that "[t]he EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." Pl.'s Opp., Ex. 2 at 9.

The plaintiff filed the instant action in the Superior Court for the District of Columbia on

August 4, 2005.  Attempting to serve the defendant, the plaintiff sent a copy of her complaint by

certified mail to Jill D. Flack, the defendant's Associate General Counsel, which Flack received

on August 22, 2005.  Pl.'s Mot. at 1.  Flack, however, was not an agent authorized by the

corporate defendant to receive service of process on its behalf.  See Def.'s Opp., Ex. 2

(Declaration of Jill D. Flack ("Flack Decl.")) at 1-2.  The defendant therefore moved in the

Superior Court to dismiss the plaintiff's complaint for insufficient service of process on

September 12, 2005.  See Pl.'s Mot. at 2; Def.'s Opp., Ex. 1 (Defendant's Motion to Dismiss for

insufficient service of process).  The plaintiff subsequently perfected service on September 20,

2005, see Supplemental Memorandum in Support of Plaintiff's Opposition to Defendant's

Motion to Dismiss, Holmes v. Pepco Holdings, Inc., Civ. No. 05-006214 (D.C. Super. Ct. Oct. 5,

2003), Ex. A (Notarized Affidavit of Process Server Stephen Robinson) ("Robinson Aff."), and

the Superior Court accordingly denied the defendant's motion to dismiss, see Def.'s Opp., Ex. 3.

The defendant then filed a notice of removal in this Court on October 13, 2005.  See Not.

of Rem. at 1.  On October 20, 2005, once the case had been removed, the defendant filed an

Answer to the plaintiff's complaint.  Ans. at 1.  Along with its Answer, the defendant also moved

to dismiss the retaliatory discharge claim in Count II of the plaintiff's complaint on the ground

that the plaintiff had not exhausted her administrative remedies as to that claim, as her EEOC

complaint, both as originally filed and as amended, did not refer to her discharge.  See Def.'s

Mot. at 1-2.  The plaintiff moved to remand the case to the Superior Court on October 28, 2005,

asserting that the defendant had not timely filed its notice of removal.  Pl.'s Mot. at 1.  The

defendant opposed the plaintiff's motion to remand, contending that its notice of removal was timely filed. Def.'s Opp. at 1-2.

That same day, October 28, 2005, the plaintiff filed a new administrative action with the EEOC, alleging that her discharge on March 4, 2005, was in retaliation for her prior EEOC discrimination charge. Pl.'s Supp., Ex. 1. The EEOC denied the plaintiff's retaliatory discharge claim and issued a second right-to-sue letter on December 5, 2005. Pl.'s Supp., Ex. 2.[3] The plaintiff therefore asserts that her earlier failure to exhaust administrative remedies with respect to her retaliatory discharge claim has now been cured. Pl.'s Supp. at 1-2.

## II.  Standard of Review

### A.  Removal and Remand

The statute governing the procedure for removal to this Court is 28 U.S.C. § 1446(b) (2000), which states in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b). Once a plaintiff has moved to remand back to state court a case removed to federal court, the defendant bears the burden of establishing that the federal court does have jurisdiction. Phillips v. Corr. Corp. of Am., 407 F. Supp. 2d 18, 20 (D.D.C. 2005) (citing

---

[3] Curiously, the EEOC's right-to-sue letter covering the plaintiff's retaliatory discharge claim indicated that it closed its investigation of the plaintiff's claim because "Suit Filed in Superior Court for the District of Columbia." See Pl.'s Supp., Ex. 2. While the EEOC's reason for dismissing the plaintiff's second complaint seems to run counter to the purpose underlying the exhaustion doctrine, the EEOC's decision not to investigate the retaliatory discharge claim is apparently not out of the ordinary, see Park v. Howard Univ., 71 F.3d 904, 907 n.1 (D.C. Cir. 1995) (noting that "[m]any cases are not investigated at all and the EEOC simply sends a right-to-sue letter to the charging party").

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  "Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand."  Johnson-Brown v. 2200 M St., L.L.C., 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (citations omitted).

**B.  Summary Judgment**

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation marks omitted).  Thus, "conclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted).  Rather, the non-moving party must go beyond "the pleadings and by her own affidavits, or depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks and citation

omitted).  Under Rule 56(c), "the moving party is entitled to summary judgment where 'the

non-moving party has failed to make a sufficient showing on an essential element of her case

with respect to which she has the burden of proof.'"  Nayar v. Howard Univ., 881 F. Supp. 15, 19

(D.D.C. 1995) (quoting Celotex, 477 U.S. at 323).

### III.  Legal Analysis

**A.  Plaintiff's Motion to Remand**

      In support of her motion to remand, the plaintiff contends that this case was not properly

removed to federal court because the defendant did not file a notice for removal within the thirty-

day period prescribed by 28 U.S.C. § 1446(b).  Pl.'s Mot. at 1-2.  The plaintiff thus asks this

Court to remand the case to the Superior Court of the District of Columbia .  Pl.'s Mot. at 1-3.

      Where a case is removable to federal court pursuant to 28 U.S.C. § 1441, the defendant

must file a notice of removal

> within thirty days after the receipt by the defendant, through service or otherwise,
> of a copy of the initial pleading setting forth the claim for relief upon which such
> action or proceeding is based, or within thirty days after the service of summons
> upon the defendant if such initial pleading has then been filed in court and is not
> required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  The Supreme Court has made clear that the thirty-day window for filing a

notice of removal begins only once the defendant has been formally served with the complaint

and the summons.  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48

(1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of

the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and

apart from service of the summons, but not by mere receipt of the complaint unattended by any

formal service").

Other Circuits have consistently observed that the Supreme Court's holding in <u>Michetti</u> established a clear rule that the thirty days within which a defendant may remove an action to federal court do not begin to run until the defendant receives formal service of process. <u>See, e.g.</u>, <u>Boyd v. Phoenix Funding Corp.</u>, 366 F.3d 524, 530 (7th Cir. 2004); <u>Marano Enters. of Kansas v. Z-Teca Restaurants, L.P.</u>, 254 F.3d 753, 756 (8th Cir. 2001); <u>Badon v. RJR Nabisco, Inc.</u>, 224 F.3d 382, 390 n.12 (5th Cir. 2000); <u>In re FMC Corp. Packaging Sys. Div.</u>, 208 F.3d 445, 447 (3d Cir. 2000); <u>Danca v. Private Health Care Sys., Inc.</u>, 185 F.3d 1, 4 (1st Cir. 1999). Likewise, a member of this Court in <u>Kopff v. World Research Group, L.L.C.</u>, 298 F. Supp. 2d 50, 57 (D.D.C. 2003), expressly applying the rule set forth in <u>Michetti</u>, held that where a defendant had not yet been served, his thirty-day window for removal had not been triggered.

Citing various precedents of this Circuit predating <u>Michetti</u>, the plaintiff asserts that the thirty-day period begins when the defendant receives a copy of the complaint and the summons, whether by formal service or other means. Pl.'s Mot. at 2. Accordingly, measuring from the day Flack, who the plaintiff thought to be the defendant's registered agent for accepting service of process, first received the summons and complaint (August 22, 2005), the plaintiff argues that the thirty-day window for removal closed long before the defendant filed its notice for removal on October 13, 2005. Pl.'s Mot. at 3. In response, the defendant contends that its notice of removal was timely under the <u>Michetti</u> rule because service was not properly effected upon the defendant until September 20, 2005, less than thirty days before the defendant filed its notice of removal. Def.'s Opp. at 1-2.

The Court agrees with the defendant's position and therefore concludes that the notice of removal was timely. While the parties agree that the plaintiff attempted to serve the defendant by

effecting service upon Jill Flack on August 22, 2005, Pl.'s Mot. at 1, Def.'s Opp. at 2, it is clear that Flack was not the appropriate person to receive service of process. Under Superior Court Rule of Civil Procedure 4(h), service could only be effected upon the defendant, a corporation, by delivering a copy of the complaint and summons "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Super. Ct. Civ. R. 4(h). As is evident from her declaration, Flack has never been an officer, managing or general agent, or other agent authorized by appointment or by law to receive service on the defendant's behalf. Flack Decl. at 1-2.

Indeed, the plaintiff appears to have conceded that mail service upon Flack was insufficient to effect service upon the defendant. After Flack originally received the summons and complaint in August 2005, the defendant moved on September 12, 2005 to dismiss the plaintiff's complaint pursuant to Superior Court Rule of Civil Procedure 12(b)(5) for insufficient service of process. See Def.'s Opp., Ex. 1 at 1, 5-7. In opposing that motion, the plaintiff conceded that she "erroneously identified Jill Flack, Esq. as the resident agent" authorized by the defendant to receive service on its behalf. See Def.'s Opp., Ex. 2 at 5. And it was only after the plaintiff had properly effected service upon the defendant's resident agent authorized to receive service, John J. Sullivan, Esq., see id. at 6, which was accomplished on September 20, 2005, see Robinson Aff., that the Superior Court denied the defendant's motion to dismiss for insufficient service of process, see Def.'s Opp., Ex. 3 at 1. Service was thus not properly effected upon the defendant by sending a copy of the summons and complaint to Flack by certified mail.

As noted above, the plaintiff perfected service of process on September 20, 2005, by delivering the summons and complaint through a private process server to the defendant's

authorized agent.  See Robinson Aff.; Def.'s Opp., Ex. 2 at 6 (alleging that the defendant

received proper service on September 20, 2005); Pl.'s Mot. at 3 (noting that defendant

"incorrectly relies on the formal service of the complaint on September 20, 2005") (emphasis in

original).  Consequently, under Michetti, 526 U.S. at 347-48, the defendant had thirty days from

September 20, 2005, to file its notice of removal.  Having done so on October 13, 2005, see Not.

Rem. at 1; Def.'s Opp. at 1, the removal notice was clearly filed within the thirty-day period

prescribed  by 28 U.S.C. § 1446(b).[4]  The plaintiff's motion to remand is therefore denied.

## B.  Defendant's Motion for Summary Judgment

Having determined that the notice to remove this case from the Superior Court was

timely, the Court must now consider whether to grant summary judgment in favor of the

---

[4] In addition to her contention that the thirty-day window for removal is triggered by the defendant's receipt of the complaint and summons by any means whatsoever, see Pl.'s Mot. at 2-3—a meritless position entirely foreclosed by Michetti, 526 U.S. at 347-48—the plaintiff raises two other somewhat analogous arguments in support of her position that the thirty-day window provided by 28 U.S.C. § 1446(b) began to run more than thirty days before the defendant filed its notice of removal, both of which are likewise without foundation.

First, the plaintiff asserts that she indeed effected proper service on the defendant on August 22, 2005, by serving the summons and complaint on Flack, who in turn forwarded the summons and complaint to the defendant's proper agent.  Pl.'s Reply at 1-2.  According to the plaintiff, Michetti does not require formal service in order for the thirty-day window prescribed by 28 U.S.C. § 1446(b) to be triggered.  Pl.'s Reply at 2.  Specifically, the plaintiff asserts that under Michetti, service is proper so long as the defendant receives both the complaint and the summons.  Pl.'s Reply at 2.  Consequently, the plaintiff concludes, "because the in house counsel received simultaneously both a copy of the summons and complaint, because she received same by certified by mail, and because she in turn passed a copy of the summons and complaint to the counsel of record," service was proper under Michetti.  Pl.'s Reply at 2-3.  This argument fatally mischaracterizes the Supreme Court's holding in Michetti.  While the Supreme Court there did emphasize the importance of the defendant's receipt of both the summons and complaint, 526 U.S. at 350-53, it is clear from the Court's opinion that the language of 28 U.S.C. § 1446(b) does not permit the thirty-day window for removal to be triggered by informal means of conveying the summons and complaint to the defendant, see id. at 353-54.  Indeed, the Michetti Court explicitly rejected that possibility on both textual and policy grounds, see id. at 354-56, and thus the Court simply cannot accept the plaintiff's characterization of the applicable rule.

Second, the plaintiff contends that the defendant, having received the summons and complaint forwarded from Flack, ought to have removed at that time rather than seeking dismissal under Superior Court Rules of Civil Procedure 12(b)(5).  Pl.'s Reply at 1-2.  The very fact that the defendant moved to dismiss for insufficiency of service, the plaintiff argues, demonstrates that the defendant had access to the complaint and the summons long before being properly served.  However, the plaintiff cites no authority, and the Court can find none, to support the proposition that service upon an improper agent is transformed into proper service simply because the defendant moves to dismiss precisely to challenge the sufficiency of that service.  Indeed, accepting the plaintiff's argument would effectively write Rule 12(b)(5) out of the Superior Court Rules of Civil Procedure in that under the plaintiff's view, any challenge to service of process would moot the insufficiency of that service.

defendant as to the retaliatory discharge claim contained in Count II of the plaintiff's complaint. The defendant contends that it is entitled to summary judgment because the plaintiff has failed to exhaust her administrative remedies as to the retaliatory discharge claim before filing this lawsuit. In return, the plaintiff argues that even if she had not exhausted her administrative remedies at the time she originally filed suit, she has now received a right-to-sue letter from the EEOC which entitles her to bring suit for her retaliatory discharge claim. Therefore, the plaintiff contends, the defendant's position that she has failed to exhaust her administrative remedies has become moot.[5] Pl.'s Supp. at 1-2.

Plaintiffs bringing actions under Title VII must exhaust their administrative remedies prior to filing a federal judicial complaint. See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); 42 U.S.C. § 2000e-5(f)(1) (permitting person aggrieved by Title VII violation to bring civil action only after administrative charge has been filed and either EEOC has dismissed the charge or taken no action within 180 days following filing of the charge). Specifically,

> Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge. Only after the EEOC has notified the aggrieved person of its decision to dismiss or its

---

[5] In her opposition to the defendant's motion, the plaintiff also argues that she exhausted her administrative remedies with respect to her retaliatory discharge claim before filing her federal judicial complaint, even though her first EEOC complaint contained no reference to retaliatory discharge, because that claim was "reasonably related" to those charges that were contained in the first EEOC complaint. Once again, however, the plaintiff has ignored a ruling by the Supreme Court foreclosing her position. In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-13 (2002), the Supreme Court held that a Title VII claimant must exhaust her administrative remedies with respect to each discrete incident of discrimination alleged in her federal complaint. Although prior to Morgan federal courts "had routinely held that a plaintiff need not exhaust her administrative remedies before filing a claim of retaliation which arose after the filing of an administrative complaint," Adams v. Mineta, Civ. No. 04-856, 2006 WL 367895, at *3 (D.D.C. Feb. 16, 2006) (Walton, J.), the Supreme Court's holding in Morgan requires a plaintiff to exhaust her administrative remedies before bringing a retaliation claim, Adams, 2006 WL 367894, at *4; see also Nurriddin v. Golden, 382 F. Supp. 2d 79, 92-93 (D.D.C. 2005); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149-50 (D.D.C. 2005). Thus, because her retaliatory discharge claim involved a separate occurrence distinct from the other charges contained in her first EEOC complaint, the plaintiff had not, at the time she filed the instant suit, exhausted her administrative remedies with respect to the retaliatory discharge claim contained in Count II of her complaint.

inability to bring a civil action within the requisite time period can that person
bring a civil action herself.

Park, 71 F.3d at 907; see also Kidane v. Nw. Airlines, Inc., 41 F. Supp. 2d 12, 15 (D.D.C. 1999).

In this case, it is clear that at the time the plaintiff filed her original complaint, she had

not exhausted all administrative remedies available to her with respect to Count II's retaliatory

discharge claim. The right-to-sue letter the EEOC issued to the plaintiff on May 5, 2005, see

Pl.'s Opp., Ex. 2, permitted her to bring suit only on the basis of the allegations contained in the

first EEOC complaint, which constitute Count I and part of Count II of the plaintiff's federal

judicial complaint. And the plaintiff's first EEOC complaint makes no reference to her allegedly

retaliatory termination for filing and pursuing that complaint. See Def.'s Mot., Ex. 1 at 1.

The plaintiff's receipt of the right-to-sue letter issued by the EEOC after her suit was

filed, however, cured her prior failure to exhaust her administrative remedies. See Williams v.

Washington Metro. Area Transit Auth., 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983). Whether a

plaintiff has cured her failure to exhaust administrative remedies prior to bringing a civil action

by exhausting those remedies after filing her complaint depends on whether the exhaustion

requirement at issue imposes a jurisdictional or non-jurisdictional barrier. See Avocados Plus,

Inc. v. Veneman, 370 F.3d 1243, 1247-48 (D.C. Cir. 2004). If a particular exhaustion

requirement constitutes a jurisdictional prerequisite to suit, the Court may not excuse its failure.

See id. at 1247. By contrast, courts may excuse a plaintiff's failure to satisfy a non-jurisdictional

exhaustion requirement "if the litigant's interests in immediate judicial review outweigh the

government's interests in the efficiency or administrative autonomy that the exhaustion doctrine

is designed to further." Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)).

The Supreme Court has never expressly addressed whether Title VII's exhaustion requirement is, as a whole, jurisdictional or non-jurisdictional. Moreover, it has reached somewhat contradictory conclusions as to whether specific components of Title VII's exhaustion requirement are themselves jurisdictional prerequisites. On the one hand, the Supreme Court held in McDonnell Douglas Corp. v Green, 411 U.S. 792, 798 (1973), that receipt of a right-to-sue letter by a Title VII plaintiff is a "jurisdictional prerequisite[] to a federal action." On the other hand, it held in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to a suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Though Zipes did not expressly overrule McDonnell Douglas on the jurisdictional question, a number of Circuits have construed Zipes as reclassifying all of Title VII's administrative prerequisites as non-jurisdictional. See, e.g., Rice v. New England Coll., 676 F.2d 9, 10 (1st Cir. 1982) (holding receipt of right-to-sue letter is not a jurisdictional requirement); Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir. 1984) (same); Pinkard v Pullman-Standard, Div. of Pullman, Inc., 678 F.2d 1211, 1215 (5th Cir.) (same), reh'g denied 675 F.2d 1383, cert. denied, 459 U.S. 1105 (1982); Fouche v. Jekyll Island-State Park Auth., 713 F2d 1518, 1524-25 (11th Cir. 1983) (same).

The situation is not entirely clear in the District of Columbia Circuit either. The Circuit Court has, of course, followed the Supreme Court's instruction in Zipes, holding that the timeliness requirements for administrative proceedings prescribed by Title VII are non-jurisdictional prerequisites. See De Medina v. Reinhardt, 686 F.2d 997, 1012 (D.C. Cir. 1982); Stewart v. Ashcroft, 352 F.3d 422, 425 (D.C. Cir. 2003); cf. Harris v. Att'y Gen. of United States, 400 F. Supp.

13

2d 24, 27 (D.D.C. 2005).  On the broader question of whether a plaintiff's wholesale failure to

initiate or complete administrative proceedings before bringing a federal lawsuit under Title VII

constitutes a jurisdictional defect, however, the Circuit Court itself has recognized that its own prior

decisions have reached conflicting answers.  See Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003).

In Rann, the Court noted that

> the district court's characterization of the exhaustion default as jurisdictional raises
> a potential complication. We have held that the timeliness and exhaustion
> requirements of § 633a(d) are subject to equitable defenses and are in that sense
> non-jurisdictional. See Kennedy v. Whitehurst, 690 F.2d 951, 961 (D.C. Cir. 1982);
> see also [Zipes, 455 U.S. 385]. But we have sometimes characterized
> non-compliance with similar requirements in comparable statutes as depriving the
> district court of "authority" to hear the plaintiffs' suit, see Cox v. Jenkins, 878 F.2d
> 414, 422 (D.C. Cir. 1989) (addressing exhaustion under the Education for All
> Handicapped Children Act), which sounds jurisdictional.

Rann, 346 F.3d at 194-95.  Concluding that "nothing turn[ed] on the characterization" of

administrative exhaustion requirements as jurisdictional or non-jurisdictional in the case before

it, the Rann Court declined to resolve the issue.  Id.

Lacking clear direction from the District of Columbia Circuit, other members of this

Court have followed divergent approaches.  Some of the Court's decisions have interpreted

Rann's agnostic pronouncement broadly, reading the Circuit's decision there to signify that the

jurisdictional character of an exhaustion requirement is never significant.  See, e.g., Mianegaz v.

Hyatt Corp., 319 F. Supp. 2d 13, 17 (D.D.C. 2004) ("While it remains unclear whether a failure

to exhaust administrative remedies is jurisdictional, 'nothing turns on the characterization of such

a dismissal,' and the court need not 'explore the matter [any] further.'") (quoting Rann, 346 F.3d

at 195) (other internal citation omitted).  In other instances, by contrast, members of this Court

have relied on cases decided prior to Rann in determining whether Title VII's exhaustion

14

requirement is jurisdictional.  In particular, the Court has read the Circuit's decision in <u>Artis v. Greenspan</u>, 158 F.3d 1301, 1302 (D.C. Cir. 1998) ("<u>Artis I</u>")—in which the Circuit Court affirmed dismissal of several plaintiffs' Title VII class complaint, which the defendants moved to dismiss under Rule 12(b)(1), because the plaintiffs had failed to exhaust administrative remedies before filing their federal lawsuit—as reflecting the Circuit's view that Title VII's exhaustion requirement constitutes a jurisdictional barrier to filing suit.  <u>See, e.g.</u>, <u>Mills v. Billington</u>, Civ. No. 04-2205, 2006 WL 1371683, at *2 (May 16, 2006) (citing <u>Artis I</u> for the principle that "it is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction"); <u>Williams v. Chertoff</u>, Civ. No. 05-211, 2005 WL 3200794, at *1 (D.D.C. 2005) (same); <u>Artis v. Greenspan</u>, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("<u>Artis II</u>") (same); <u>see also</u> <u>Ajuluchuku v. Oswald</u>, Civ. No. 05-0732, 2006 WL 325741, at *1 (D.D.C. Feb. 10, 2006) (citing <u>Artis II</u> for rule that failure to exhaust administrative remedies is a jurisdictional defect).[6]

After <u>Rann</u>, however, the District of Columbia Circuit in <u>Avocados Plus</u>, 370 F.3d at 1247-48, offered a straightforward approach to determining whether a specific exhaustion requirement is jurisdictional.  Explicitly acknowledging the distinction between statutory exhaustion requirements that do impose jurisdictional barriers and those that do not, the <u>Avocados Plus</u> Court noted that distinguishing the former type of requirement from the latter "is

---

[6] This Court is not convinced that the line of cases purporting to follow <u>Artis I</u>, 158 F.3d 1301, reflect the appropriate course to follow in this case.  First, while the <u>Artis I</u> Court did uphold dismissal on the basis of the plaintiff's failure to exhaust administrative remedies, <u>see</u> 158 F.3d at 1302-03, the Court there nowhere confirmed or even discussed the propriety of seeking dismissal under Rule 12(b)(1), much less the jurisdictional character of Title VII's exhaustion requirement, <u>see generally</u> 158 F.3d 1301.  Second, even assuming that <u>Artis I</u> can be read as expressing tacit approval of characterizing Title VII's exhaustion requirement as jurisdictional, <u>Artis I</u> would still constitute only one of the Circuit's several conflicting pronouncements on the question prior to <u>Rann</u>, <u>see Rann</u>, 346 F.3d at 195.  Third, none of these cases, including those decided subsequent to <u>Avocados Plus</u>, 370 F.3d at 1247, apply the rule stated there, which requires the Court to presume that a statutory exhaustion requirement is non-jurisdictional unless Congress clearly indicates an intent to place a limit on the Court's jurisdiction.

purely a question of statutory interpretation." Id. at 1247.  Courts should infer a non-

jurisdictional exhaustion requirement whenever Congress provides an administrative avenue for

relief, id. at 1248 (observing that "the existence of an administrative remedy automatically

triggers a non-jurisdictional exhaustion inquiry"), as it has done in Title VII, see 42 U.S.C. §

2000e-5(f)(1).  Only where "a statute . . . contain[s] sweeping and direct statutory language

indicating that there is no federal jurisdiction prior to exhaustion" may courts conclude that a

particular exhaustion requirement is jurisdictional.  Avocados Plus, 370 F.3d at 1248 (quoting

Weinberger v. Salfi, 422 U.S. 749, 757 (1975)) (internal quotation marks and treatise citation

omitted).  Thus, when faced with a statutory exhaustion requirement, the Court must "presume

[that] exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the

judiciary is barred from hearing an action until the administrative agency has come to a

decision." Id. (citation omitted).[7]

Under the rule articulated in Avocados Plus, 370 F.3d at 1247-48, it is apparent that Title

VII's exhaustion requirement does not constitute a jurisdictional barrier to filing a lawsuit.  The

Court must begin by "presum[ing] [that] exhaustion is non-jurisdictional," id. at 1248, and it may

depart from this presumption only if Title VII's exhaustion prerequisite "states in clear,

unequivocal terms that the judiciary is barred from hearing an action until the administrative

---

[7] In its recent decision in Arbaugh v. Y & H Corp., ___ U.S. ___, ___, 126 S.Ct. 1235 (2006), the Supreme Court applied a very similar framework in determining that Title VII's 15-employee requirement does not impose a jurisdictional barrier to suits alleging workplace discrimination in violation of Title VII.  There, the Court held that

[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.  Applying that readily administrable bright line to this case, we hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue.

Id. at ____, 1245.

agency has come to a decision," id. Nothing in the language of 42 U.S.C. § 2000e-5(f)(1), which

contains the requirement that plaintiffs bring an administrative action before the EEOC before

filing a civil action, suggests that Congress intended to impose a jurisdictional barrier to Title VII

lawsuits.[8] Indeed, nowhere in all of § 2000e-(5) is there "sweeping and direct statutory language

indicating that there is no federal jurisdiction prior to exhaustion," Avocados Plus, 370 F.3d at

1248 (internal quotation marks and treatise citation omitted).

To the contrary, the only statement in § 2000e-5(f) addressing a court's jurisdiction to

hear Title VII actions is quite broad, and it offers no indication that Congress intended the

exhaustion requirement to constrict the jurisdiction of the federal judiciary in such situations.

See 42 U.S.C. § 2000e-5(f)(3).[9] Thus, finding nothing in the language of Title VII indicating that

---

[8] The pertinent portion of 42 U.S.C. § 2000e-5(f)(1) provides:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C.A. § 2000e-5(f)(1).

[9] 42 U.S.C. § 2000e-5(f)(3) states:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(continued...)

failure to exhaust administrative remedies constitutes an absolute bar to judicial review, the Court must conclude that Title VII's exhaustion requirement is not jurisdictional.  See Avocados Plus, 370 F.3d at 1247.

The District of Columbia Circuit's recent decision in In re James, 444 F.3d 643, 647 (D.C. Cir. 2006), suggests that the Circuit Court is also currently taking such a view.  In James, the petitioners argued, inter alia, that their claim warranted interlocutory review under Federal Rule of Civil Procedure 23(f) to determine whether the plaintiffs had properly exhausted their administrative remedies, an issue which the petitioners argued related either to class certification or to the court's jurisdiction.  444 F.3d at 647.  The Circuit Court disagreed.  While not explicitly applying the Avocados Plus rule, the Court concluded that

> [n]either of [the] petitioners' arguments . . . relates to certification of the class or the court's jurisdiction.  As noted above, the Title VII questions [the] petitioners present implicate none of Rule 23's certification requirements.  Nor is either timeliness or administrative exhaustion jurisdictional.

Id. (emphasis added and citations omitted).[10]  Consequently, pursuant to the rule established by the Circuit in Avocados Plus, 370 F.3d at 1247-48, and in light of its recent statement in James, 444 F.3d at 647, this Court is persuaded that Title VII's requirement that plaintiffs exhaust their

---

[9](...continued)

Id.  Given the language of § 2000e-5(f)(3), the portion of § 2000e-5(f)(2) which makes it "the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited" plainly refers to an express grant of jurisdiction in § 2000e-5(f)(3), not the exhaustion requirement stated in § 2000e-5(f)(1).

Additionally, the provision in § 2000e-5(f)(1) which allows a plaintiff to bring a civil action if she has filed an EEOC complaint but the EEOC has taken no action for at least one hundred and eighty days gives further support to the Court's conclusion that Title VII's exhaustion requirement is a distinctly procedural, non-jurisdictional prerequisite.  See § 2000e-(f)(1).

[10] Notably, the James Court also characterized its 1983 decision in De Medina, 686 F.2d at 1012, as "noting that failure to file a claim, like the timeliness requirement, is not a jurisdictional prerequisite to suit."  James, 444 F.3d at 647.

administrative remedies before bringing civil actions constitutes a non-jurisdictional barrier to filing suit in federal court.

Unlike jurisdictional exhaustion requirements, which the Court may not excuse, see Avocados Plus, 370 F.3d at 1247 (stating that "[i]f the statute does mandate exhaustion, a court cannot excuse it"), a plaintiff's failure to fulfill a non-jurisdictional exhaustion requirement need not be fatal to her claim. The Circuit Court has held in the Title VII context where a plaintiff fails to completely exhaust her administrative remedies prior to filing suit, but exhausts them after filing and before dismissal, the Court should excuse the plaintiff's prior failure to exhaust. See Williams, 721 F.2d at 1418 n.12 (holding that "[r]eceipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court"); accord Perry v. Beggs, 581 F. Supp. 815, 816 (D.D.C. 1983) (holding that a Title VII plaintiff's post-filing receipt of a right-to-sue letter cured the plaintiff's prior to failure to exhaust her administrative remedies).

Thus, under Williams, where a defendant moves to dismiss a plaintiff's Title VII action for failure to exhaust administrative remedies because the plaintiff did not receive a right-to-sue letter before filing suit, a court should not dismiss the claim if, after filing the complaint but before dismissal, the plaintiff receives a corresponding right-to-sue letter from the EEOC. See Gomez v. Trustees for Harvard Univ., Civ. No. 87-148, 1987 WL 16335, at *1 (D.D.C. Aug. 18, 1987) (denying the defendant's motion to dismiss, which alleged that the plaintiff failed to exhaust administrative remedies by filing his complaint before receiving a right-to-sue letter, because the plaintiff subsequently received a right-to-sue letter prior to dismissal); see also Quarles v. Gen. Inv. & Dev't Co., 260 F. Supp. 2d 1, 17 n. 13 (D.D.C. 2003) (Walton, J.)

(applying rule articulated in <u>Williams</u> that receipt by plaintiff of right-to-sue letter after complaint was filed cures the failure to receive the notice before filing federal lawsuit); <u>Rauh v. Coyne</u>, 744 F. Supp. 1186, 1189 (D.D.C. 1990) (same).

Here, it is clear that the plaintiff's exhaustion of her administrative remedies after this action was filed has cured her failure to do so before bringing this lawsuit. Under the rule established in this Circuit in <u>Williams</u>, the plaintiff's failure to exhaust her administrative remedies before bringing this action was cured when the EEOC issued its second right-to-sue letter to the plaintiff on December 5, 2005, encompassing her retaliatory discharge claim. <u>See Williams</u>, 721 F.2d at 1218 n.12.

More broadly, the Court may overlook a plaintiff's failure to exhaust her administrative remedies if (1) enforcing the exhaustion requirement would not fulfill the purposes underlying non-jurisdictional exhaustion prerequisites—which include "giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review," <u>Avocados Plus</u>, 370 F.3d at 1247 (internal quotation marks and citation omitted)—and (2) "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further," <u>id.</u> As the District of Columbia Circuit observed in <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985):

> [E]xhaustion is not an end in itself; it is a practical and pragmatic doctrine that 'must be tailored to fit the peculiarities of the administrative system Congress has created.' Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of rooting out every vestige of employment discrimination within the federal

government. . . .  Congress never . . . wanted the exhaustion doctrine to become a massive procedural roadblock to access to the courts.

Id. (internal quotation marks and citation omitted).[11]

In this case, there is no reason to believe that strictly enforcing Title VII's exhaustion requirement here will advance any of the purposes underlying that requirement.  The EEOC summarily dismissed the plaintiff's retaliatory discharge claim, giving as its only reason that "Suit [was] Filed in Superior Court for the District of Columbia."  See Pl.'s Supp., Ex. 2.  As in other cases where the agency declines to vigorously investigate a charge before permitting the aggrieved party to bring a lawsuit, see Park, 71 F.3d at 907 n.1 (noting that "[m]any cases are not investigated at all and the EEOC simply sends a right-to-sue letter to the charging party"), the EEOC here appears to have completed whatever action it intended to take on the plaintiff's retaliatory discharge claim.  Remanding the case to the EEOC would serve no purpose, as the agency itself has declined to offer its expertise in resolving the plaintiff's claim or develop an administrative record to aid the Court in adjudicating the dispute.  See Avocados Plus, 370 F.3d at 1247.[12]  Granting summary judgment for defendant on this component of the plaintiff's complaint would therefore achieve none of the objectives for which non-jurisdictional exhaustion requirements are imposed.  See Avocados Plus, 370 F.3d at 1247.

---

[11] While the Court recognizes that the Circuit's decision in Brown is not directly controlling here, as that case addressed the exhaustion doctrine in the context of federal agencies investigating claims raised by their own employees, see 777 F.2d at 14, the Court concludes that the Circuit's discussion of the nature and limits of the exhaustion requirement in that context provides an accurate characterization of the doctrine in general.

[12] The third purpose of the non-jurisdictional exhaustion requirements noted in Avocados Plus, 370 F.3d at 1247—giving agencies the opportunity to correct their own errors," id.—is irrelevant to the present case, as the plaintiff is not an employee of a governmental agency charged with investigating her Title VII claim internally.  Cf. Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985) (noting that under Title VII, "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible").

Additionally, the balance of interests weighs clearly against granting summary judgment for the defendant. The plaintiff's employer is not a governmental agency, and the EEOC has declined further involvement with the case; therefore, the "government's interests in . . . efficiency or administrative autonomy," <u>Avocados Plus</u>, 370 F.3d at 1247, are trivial. The plaintiff, by contrast, has a significant interest in "immediate judicial review." <u>Id.</u> Remitting the plaintiff's retaliatory discharge claim to the EEOC would leave her no forum in which to effectively challenge the defendant's actions, a result which would allow the exhaustion requirement "to become a massive procedural roadblock to access to the courts," <u>Brown</u>, 777 F.2d at 14 (internal quotation marks and citation omitted). Thus, because the plaintiff has now exhausted her administrative remedies, because enforcing the exhaustion requirement strictly would not further any of the doctrine's purposes, and because there is no governmental interest that counterbalances the plaintiff's interest in immediate judicial review, the Court declines to grant summary judgment to the defendant on her retaliatory discharge claim. The defendant's motion is therefore denied.

## IV. Conclusion

Because the defendant timely removed this action within the time limits prescribed by 28 U.S.C. § 1446(b), the plaintiff's motion to remand is denied. Moreover, although the plaintiff failed to exhaust her administrative remedies with regard to her retaliatory discharge claim prior to bringing this action, she subsequently exhausted those remedies, and her receipt of a right-to-sue letter encompassing the retaliation claim cures her prior failure to exhaust. Therefore, the defendant's motion to dismiss the retaliatory discharge claim contained in Count II of the

plaintiff's complaint, which the Court must construe as a motion for summary judgment, is also denied.

      **SO ORDERED** this 7th day of July, 2006.[13]


                            REGGIE B. WALTON
                            United States District Judge

---

[13]An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

23